# APRIL TERM, 1858.

## THE STATE OF MISSISSIPPI v. BROWN & JOHNSTON.

1. PLEADING AND PRACTICE : WHEN PLEA STRICKEN OUT AS FRIVOLOUS, THE COURT MAY ENTER JUDGMENT FINAL, OR RESPONDEAT OUSTER.—Where, upon motion of the plaintiff, the defendant's plea is stricken out as frivolous, it is within the sound discretion of the court either to enter judgment final for the plaintiff, or to allow the defendant to plead over.

2. SAME : DUPLICITY IN A PLEA REACHED ONLY BY DEMURRER.—The defect of duplicity in a plea can be reached by demurrer only; it will be error, therefore, for such a cause to strike the plea from the record.

3. SAME : IN QUO WARRANTO CASES, PLEA OF NOT GUILTY AND DISCLAIMER MAY BE JOINED.—To an information in the nature of a writ of *quo warranto*, charging the defendant, as an individual, with usurping and exercising the franchise of banking, he may plead not guilty, and also a disclaimer of any right to do the acts complained of : the two defences are not inconsistent with each other.

4. SAME : IN QUO WARRANTO, STATE IS NOT ENTITLED TO JUDGMENT ON DISCLAIMER, IF NOT GUILTY BE ALSO PLEADED.—Where, to an information in the nature of a writ of *quo warranto*, the defendant pleads not guilty, and also a disclaimer, the State is not entitled to a judgment against the further exercise of the franchise on the disclaimer, the plea of not guilty being a full defence to the suit.

5. SAME : IN QUO WARRANTO AGAINST AN INDIVIDUAL, HE MAY DEFEND BY SHOWING THAT HE ACTED AS A CORPORATOR, AND NOT AS AN INDIVIDUAL.—The plea of not guilty, to an information in the nature of a writ of *quo warranto*, charging the defendant, as an individual, with usurping and exercising the franchise of a banking corporation, raises the issue whether or not the defendant, as an individual, had usurped and exercised the franchises as charged, and not the issue as to whether the corporation whose franchises he had used had, by misuser or non-user, forfeited its charter ; and hence, under that issue, the defendant may, in reply to evidence on the part of the State tending to show that he used the franchises as an individual, introduce proof to show that the corporation was duly organized according to law, and that he did the acts complained of not as an individual, but as an officer of the corporation.

ERROR to the Circuit Court of Yazoo county.    Hon. E. G. Henry, judge.

This was a proceeding by information, in the nature of a writ of *quo warranto*, under the second section of the Act of 1843 (Hutch. Dig.), against the defendants, charging them with exercising, using, and enjoying the franchise of being a banking corporation, &c., without legal warrant or authority. A special plea, justifying under the charter of the Commercial Bank of Manchester, and traversing the charge of exercising, using, and enjoying said franchises, otherwise than as members of said corporation, and in accordance with its charter, was filed by defendant.

The State's demurrer to this plea was overruled by the Circuit Court; but, on appeal to this court, the plea was adjudged insufficient, and the cause remanded. See 33 Miss. R. 500.

After the cause was remanded, the defendants, under leave granted, pleaded as follows:—

"The defendants, by attorney, come, &c., and for plea, &c., say that they have not, for the space of twelve months last past, been exercising, using, and enjoying, within the county of Yazoo, without legal warrant or authority, the franchises in said information set forth, as in said information pleaded. And this, they pray, may be inquired of by the country."

The district attorney moved to strike out this plea as frivolous, and for leave to sign judgment against the defendant for want of a plea. The court sustained the motion to strike out the plea, but refused the leave asked to sign judgment, and allowed the defendants to plead over, and the plaintiff excepted.

The defendants then filed the following pleas:—

"1. The defendants, &c., say that they have not, for the space of twelve months last past, before the filing of said information, been exercising, using, and enjoying, within the county of Yazoo, the franchises in the information mentioned and set forth, as in said information is alleged and set forth, and they disclaim the right to use, exercise, or enjoy said franchises; and this, they pray, may be inquired of by the country."

2. The defendants further pleaded, in justification, the charter of the Commercial Bank of Manchester, passed in 1836, setting out that the bank had been duly organized thereunder, and in accordance with its provisions; and that the defendants, with others, are the owners of the capital stock of said corporation; and that

VOL. V.—44

defendant, Johnston, is the president thereof; and that, in their corporate capacity, under said charter, and in strict conformity to its requirements, and not otherwise, they have exercised the banking privileges mentioned in the information, and still exercise the same. And they denied and disclaimed the exercise and enjoyment of the franchises or any right to the same, in any other manner than under and by virtue of the said charter, and according to its terms.

Upon the filing of these pleas, the district attorney moved for judgment on the disclaimer, and to strike out the second plea last pleaded, " because it contradicts the disclaimer in the first plea pleaded, and because the same presents two contradictory issues to be tried by the same jury."

The court, upon consideration of this motion, adjudged the second plea to be insufficient, and ordered it to be stricken out and rejected, and granted leave to the defendants to plead over, but refused the permission asked to sign judgment upon the first plea.

The defendants refused to plead further, and the district attorney, having joined issue upon the first plea last pleaded, the cause was, by consent of parties, submitted to the court, who found the issue in favor of the defendants.

Upon the trial of the issue, the plaintiff proved, by Samuel V. Mitchell, that there is a banking-house in Yazoo city, in the county of Yazoo, by the name of " The Commercial Bank of Manchester;" that defendants, Brown and Johnston, have invested over $100,000 in the stock of the same; that they commenced business in October, 1855, and continued said business until the present time; that they had issued notes in the usual form of bank notes, to circulate as money, up to the time of filing this information, in the name of the Commercial Bank of Manchester, to the amount of $150,000, or $160,000 ; that the notes are all signed by defendant, Johnston, as president, and a part by witness, as cashier, and the remainder by Mr. Bailey, as cashier; that they had a directory, of which defendant Johnston was one, and Charles Holmes, Hiram Harrison, John W. Woolfolk, and the witness, are the others; that, in the early part of 1856, the directory ordered witness to procure engravings for their notes, and he procured the same in New Orleans, through the house of Brown, Johnston & Co., of which defendants are members.  Witness was

cashier from December, 1855, and paid out the notes, as before stated, in the purchase of foreign and domestic bills, and of exchange, and gold and silver. The notes were in the usual form of bank notes, and in denominations of $5, $10, $50, and $100, and more than $20,000 of each were put in circulation before the filing of the information. Witness "only knew defendants as owners of stock to the amount of $100,000, and defendant Johnson, as president of the banking company." They dealt in foreign and domestic exchange, bought and sold gold and silver coins, and constantly received deposits of current money, and of gold and silver. In May, 1854, the defendants bought of the assignees of the Commercial Bank of Manchester, the charter of said bank, and paid $5000 therefor; and that the notes of the company have circulated as money in the community.

Defendants then proposed to cross-examine said witness, but the plaintiff objected (it is not stated upon what ground). The court overruled the objection; and the witness, upon his cross-examination, stated: That the defendants and Holmes were the largest stockholders, the latter owning $25,000 and the former $100,000 of stock; that Harrison and the witness and Woolfolk owned $2000 each. That all acts done by Johnston, as stated in witness's examination in chief, "were claimed by Johnston to have been done under the charter of the bank, and under the order of the board of directors, and not by him individually." Witness knew of no banking-house carried on in Yazoo city before the commencement of this suit, by Johnston individually, or by Brown & Johnston, as a firm. The banking-house spoken of was the banking-house of the Commercial Bank of Manchester. Johnston commenced to act as President of the Commercial Bank in October, 1855, and has continued so to act up to the present time. That by the words, "they commenced business in October, 1855," used in his examination in chief, he meant the Commercial Bank, and not Brown & Johnston.

After the witness was cross-examined, the district attorney moved to rule out the evidence given by him on his cross-examination, but the court overruled the motion.

The defendants then offered in evidence a printed copy of the act incorporating the Commercial Bank of Manchester, passed in

the year 1836, and the amendments thereto; and also offered to prove that a banking corporation was organized under the same in the year 1836. To this the plaintiff objected, but the court overruled the objection, and the defendants read in evidence the charter and amendments; and the plaintiff admitted that the bank had been lawfully organized in the year 1836, and plaintiff excepted.

After the defendants' testimony was closed, the plaintiff then offered to prove as follows: "That the defendants were not members of the Commercial Bank of Manchester, when organized in 1836; and that, in the year 1845, said corporation assigned to trustees all its effects of every description, for the payment of its debts, and to distribute the balance, if any, *pro rata*, among its stockholders; that in the year 1851, they made a re-assignment of all their effects for the same purpose, and authorized the said trustees to sell the charter. That under said last assignment, the effects of said bank were distributed to the creditors and stockholders, and the capital stock and property of the same withdrawn; and that in May, 1854, defendants purchased the charter of the Commercial Bank of Manchester of said last-named trustees, for the sum of $5000; and that for five years previous to said purchase, the bank had not elected any directory, and had done no banking business; but, on the contrary, had directed by deed, an assignment of the charter to any person who would purchase the same."

The court refused to hear this proposed evidence, and the plaintiff excepted.

After the verdict, and before judgment, the plaintiff moved for a new trial, and for a judgment for the plaintiff *non obstante veredicto*, "because said finding was contrary to law and evidence; because the court refused plaintiff's motions to sign judgment for plaintiff on the disclaimers of defendants; and because the court admitted improper evidence for the defendants, and improperly ruled out evidence offered by plaintiff."

The court overruled these motions, and rendered judgment for defendants; and thereupon the plaintiff tendered a bill of exceptions, and sued out this writ of error.

The counsel for the plaintiff in error made the following assignment of errors:—

1st. The court erred in allowing defendants to plead over, after the rejection of their amended or second plea. Their first plea had been ruled insufficient on demurrer. They could not plead another demurrable plea. See Code of 1857, p. 495, art. 110.

2d. The court erred in refusing to sign judgment in favor of the State on the rejection of the defendants' second plea. In *quo warranto*, the defendants must either disclaim or justify, and if, on permission to plead over, they do neither, judgment must be rendered for plaintiff.

3d. The court erred in permitting the defendants to plead a third time to merits, and also permitting defendants to file a plea of disclaimer and justification at the same time. The defendants in *quo warranto* cannot disclaim and justify, but must stand upon one plea or the other. See former opinion in this cause.

4th. The court erred in refusing to sign judgment for plaintiff, after defendants had filed a disclaimer. On disclaimer, judgment of ouster goes for the State.

5th. The court erred in refusing to set aside the verdict and grant a new trial, for the following reasons:—

*a.* The defendants had denied the allegations of usurping and exercising banking privileges. This charge was fully proven by the evidence, and defendants should have been found guilty. See the evidence of Samuel V. Mitchell, in bill of exceptions.

*b.* The court allowed defendants under a disclaimer to justify, by proving they were a corporation. See cross-examination of Mitchell, and printed charter of Commercial Bank of Manchester.

*John D. Freeman,* for plaintiff in error.

*R. S. Holt,* for defendant in error.

*Yergers* and *Anderson,* on same side.

HANDY, J., delivered the opinion of the court.

This was a proceeding in the nature of *quo warranto* against the defendants in error, for carrying on the business of banking without authority of law, and in the name of the Commercial Bank of Manchester. The case was formerly in this court upon the

question of the right of the defendants, as individuals, to carry on the business of banking in the name of the Commercial Bank of Manchester, in virtue of their being proprietors of the stock; and, upon demurrer to their plea setting up that defence, it was held that they had no right or authority to carry on the banking business as individuals, under the charter, and the demurrer was sustained, and the cause remanded for further proceedings. When the case went back, and at the November term, 1857, the defendants pleaded a plea of not guilty generally; which, upon motion of the district attorney, was stricken out as frivolous. At the same time, the district attorney moved the court for judgment, for want of a plea; which motion was overruled, and the defendants were allowed to plead over, and exception was taken thereto, in behalf of the State. And this is the first error assigned.

If the plea, which was ruled out, had been demurred to, and held insufficient, the statute directs that the defendants should be required to answer over; but, as no demurrer was filed, it was a matter depending upon the sound discretion of the court, whether, upon the rejection of the plea tendered, the defendants should be allowed to plead further; and we think that the court acted properly in allowing that liberty, and in refusing to render judgment against the defendants.

The defendants then filed a plea of general denial of the allegations of the information, and disclaiming the right to use, exercise, or enjoy the franchises in the information mentioned. And thereupon the district attorney moved the court for judgment against the defendants, by reason of the disclaimer; which motion was overruled. After verdict for the defendants, the district attorney moved for a new trial, and for a judgment *non obstante veredicto,* because the State was entitled to judgment on the disclaimer of the defendants. And this presents the second ground of error to be considered.

The statute allowed the defendants to plead not guilty to the information (Rev. Code, 294, art. 16, 17); and upon that plea, it devolved upon the State to establish the charges contained in the information. For what purpose the disclaimer was added to the plea, does not appear by the record. If it was inconsistent with the defence of not guilty contained in the former part of the plea,

the course of the district attorney was to demur to it. But, instead of that course, he took issue, upon the plea of not guilty and the disclaimer.

The two grounds of defence do not, however, appear to be inconsistent under the circumstances of the case as presented by the record.

The defendants were charged, as individuals, as having usurped, and being in the unlawful exercise of the franchises of the Commercial Bank of Manchester. They deny that they are guilty of the charge, and at the same time disclaim any right to exercise these franchises,—both grounds of defence, of course, having reference to them as individuals. There is certainly nothing inconsistent in this; for they might not be guilty of the usurpation, and still disclaim any right of banking as individuals, as charged. Whatever right the State might have had to take judgment against the further exercise of the franchises upon the disclaimer, if that had been the only defence; or, whatever should have been the judgment upon a demurrer to the plea for duplicity, it was certainly not competent for the court, upon the mere motion of the district attorney, and without evidence or trial, to disregard the plea of not guilty, and to render a judgment against the defendants against the further exercise of franchises, which, by their plea, they denied that they had exercised.

The court, therefore, acted properly in refusing to render judgment upon the disclaimer, either before or after the trial of the issue.

Upon the trial, the State offered evidence for the purpose of showing that the defendants were carrying on the business of banking as individuals, but under color of the charter of the Commercial Bank of Manchester, and to that end introduced and examined Samuel V. Mitchell, the cashier of the concern, who testified that the defendants had invested upwards of one hundred thousand dollars in the Commercial Bank of Manchester; that there was a banking-house under that name in Yazoo city, doing the usual business of banking, having commenced the same in October, 1855, and continued the same up to the time of filing this information, issuing notes signed by the defendant Johnston as president, and by witness as cashier. That they had a directory, consisting of

five named persons; that the witness, by order of the directory, procured notes for issue, through the house of Brown, Johnston & Co., of New Orleans, in the early part of the year 1856, and they were signed as above stated, and issued in the usual form of bank notes. That witness only knew the defendants as owners of stock to the amount of $100,000, and defendant Johnston as president of the banking company; and that in May or June, 1854, the defendants bought of the assignees of the Commercial Bank of Manchester, the charter of that bank, and paid therefor $5000.

The defendants then proposed to cross-examine the witness, to which the district attorney objected; but the objection was overruled, and the witness stated, on cross-examination, in substance, that the defendants were the largest stockholders in the Commercial Bank of Manchester; that all the acts done by Johnston as president, he claimed, were done by him as president under the charter of the bank, and by order of the board of directors, and not by him individually; that he knew of no banking-house carried on by defendants as a firm, or by Johnston individually; that the banking-house spoken of was that of the Commercial Bank of Manchester; that Brown and Johnston owned $100,000 of stock in the bank; Holmes owned $25,000 worth; Harrison, Woolfolk, and Mitchell owned $2000 worth each; and that these persons constituted the board of directors. This testimony was then moved, by the district attorney, to be ruled out; but the motion was overruled.

The defendants then offered in evidence a printed charter of the Commercial Bank of Manchester, passed in the year 1836, and amendments thereto, and offered to prove that a banking corporation was organized under the same in the year 1836, which was objected to by the district attorney; but the objection was overruled, and the evidence permitted to go to the jury.

It is now insisted, 1st, that the court erred in permitting this evidence on the part of the defendants to go to the jury; and 2d, that upon the evidence the State was entitled to judgment.

As to the first point, the issue was, whether the defendants had, *as individuals,* usurped and were exercising the banking franchises of the Commercial Bank of Manchester? The evidence on the part of the State had a tendency to show that they were acting as

individuals under color of the charter of the bank. And the testimony attempted to be brought out upon cross-examination of the State's witness, and also offered by production of the bank charter, and proof of the organization of the bank under it, was directly responsive to this evidence, and pertinent to the issue. It was, that the bank had been duly chartered and organized as an incorporated bank, and that the defendants were only concerned in the operations carried on as stockholders, and that Johnston's agency in its operations was as its president; that the acts complained of in the information were the acts of the president and directors of a legally constituted bank, and not of the defendants or either of them as individuals. The testimony was, therefore, clearly legal.

We also think that it was sufficient to sustain the verdict. If the testimony of the witness Mitchell was entitled to credit, and it cannot be impeached in this proceeding by the State, whose witness he was, it is manifest that the operations carried on in the name of the Commercial Bank of Manchester, were not the acts of the defendants or either of them, but those of the President and Directors of the Commercial Bank of Manchester. Whether, as such, they were authorized and in conformity to the charter, is not a question now for our consideration.

Let the judgment be affirmed.

See *The State* v. *Brown & Johnston*, 33 Miss. R. 300; *The State* v. *Commercial Bank of Manchester*, Ib. 474.